UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-14074-CR-ROSENBERG/LYNCH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

FRANCISCO ROBLES-REYES,

    Defendant.
_____/

FILED by _____ D.C.

APR - 1 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO COLLATERALLY ATTACK THE UNDERLYING DEPORTATION ORDER AND REQUEST FOR EVIDENTIARY HEARING [D.E. 33]

**THIS CAUSE** having come on to be heard upon the aforementioned motion and this Court having reviewed the motion as well as the government's response, the transcripts of the Deportation/Removal Hearing which the Defendant attached to his motion, as well as the audio recording of that Deportation/Removal Hearing admitted into the record at the request of the government, and the Court otherwise being advised in the premises makes the following recommendations to the District Court:

1.  The Defendant is charged in an Indictment with being an alien found unlawfully within the United States following a prior deportation, in violation of Title 8, United States Code, Sections 1326(a) and (b)(1). The Defendant's present motion [D.E. 33] attempts to collaterally attack the underlying Deportation Order which serves as one of the essential elements the government must prove beyond a reasonable doubt before they could obtain a conviction in the underlying Indictment in this case.

2.  The Defendant's motion alleges that on or about March 23, 2007, the Defendant was brought before an Immigration Court through a telephonic appearance for a Deportation/Removal Hearing. This hearing was subsequent to the Defendant's prior felony conviction for driving without a valid driver's license and DUI manslaughter. The

Defendant's motion asserts that his felony conviction and sentence for driving without a valid driver's license involving death/serious injury was vacated to the lesser included conviction of the second degree misdemeanor of driving while license suspended. This Court's review of the Defendant's motion will concern itself mainly with the sufficiency of the Deportation/Removal Hearing as argued by the Defendant.

3. As the written transcript and the audio of that Deportation/Removal Hearing sets forth, the Defendant telephonically participated in the hearing from a Florida Department of Corrections institution in Malone, Florida. There was an interpreter who translated for the Defendant at all times. The transcript reflects that the Immigration Court Judge Kevin G. Bradley presided over the hearing and communicated with the Defendant through the use of an interpreter.

4. Judge Bradley identified himself and advised the Defendant that the hearing was concerning the Defendant's possible deportation from the United States. The Defendant acknowledged that he understood the purpose of the hearing. The Defendant was asked if he had an attorney representing him and the Defendant acknowledged that he did and gave a name. The Defendant acknowledged that this attorney would be representing him in Immigration Court.

5. At that time Judge Bradley stated that he would continue the case for sixty days to allow the Defendant's attorney to enter their appearance and advised the Defendant that the Immigration Court could not appoint an attorney to represent the Defendant. Further, Judge Bradley advised the Defendant that during these proceedings the Defendant had the right to examine any documents or witnesses presented against him as well as presenting any documents or witnesses in support of the Defendant's case.

2

6.      Judge Bradley asked the Defendant if the Defendant wished some time to see his lawyer to enter their appearance to represent him or if the Defendant wished to go forward that day and represent himself. In response, the Defendant stated that he used to have a state assigned attorney, but his mother had been trying to get in contact with this private attorney, whose name the Defendant gave to the Court. The Defendant stated he was waiting to hear about that contact that his mother was attempting to make with this named lawyer.

7.      Judge Bradley then advised the Defendant that he should make sure that this private attorney was going to represent him in Immigration Court as opposed to the criminal court proceedings. Judge Bradley once again reminded the Defendant that this hearing did not deal with the Defendant's criminal conviction. Judge Bradley advised the Defendant again that those proceedings, which he was conducting, were solely to determine whether or not the Defendant should be deported.

8.      The Defendant then stated at that time, "What I want is to be sent to Mexico." In response, Judge Bradley stated that this was what the proceedings were all about. Judge Bradley stated, "If you want to go forward today and be deported to Mexico then we can – and be ordered deported to Mexico, then we can go ahead and do that." In response, the transcript reflects the Defendant stated "Yes." Judge Bradley, then to re-affirm that this is what the Defendant wanted, asked "That is what you want to do, sir?" To which the Defendant responded "Yes, sir."

9.      Judge Bradley then requested that the Defendant be sworn in and placed the Defendant under oath. The Defendant acknowledged that he would do so. Judge Bradley then advised the Defendant that the government alleges that he is not a U.S. citizen nor

a national of the United States and that it is alleged he is a native and citizen of Mexico. When asked if that was correct, the Defendant responded "Yes."

10. Judge Bradley then once again asked the Defendant is he was a native and citizen of Mexico, not of the United States. The Defendant responded, "That is so." Judge Bradley then advised the Defendant that the government alleged that the Defendant had entered the United States illegally and asked the Defendant if that was true. The Defendant responded, "That is so." In response, Judge Bradley confirmed with the Defendant that the Defendant did not possess any document or visa that would allow him to enter or be present in the United States, to which the Defendant replied "That is so."

11. At this point in the transcript Judge Bradley advises the Defendant that he finds the charges brought against the Defendant to be correct and that the Defendant was deportable from the United States. In response to that statement the Defendant stated, "That is fine." After discussing the Defendant's marital status and whether or not he has any children, Judge Bradley told the Defendant that he had a right to designate the country to which he would be deported. In response the Defendant stated "Yes, I am Mexican from Cancun, Quintana Roo." Judge Bradley then advised the Defendant that he would designate Mexico as the country for deportation. The Defendant was then asked by Judge Bradley the Defendant's mother's immigration status here in the United States and if she is a permanent resident of the United States or a U. S. citizen. The Defendant stated that he would not be able to tell Judge Bradley that because he lived in another place and barely had contact with his mother.

12. Judge Bradley then stated on the record **that it did not appear** that there was any relief from deportation available to the Defendant and he was going to issue an Order for the Defendant's removal. The Defendant responded "That is fine." Judge Bradley then

asked the Defendant "Do you accept the Court's decision, sir, and waive appeal, correct?" The Defendant responded "Yes, sir." The hearing was then concluded.

13. The factual record is not in dispute. In fact, the Defendant attaches copies of the transcript to his motion and cites to various portions of the transcript in support of his motion. The Court has also listened to the audio recording submitted by the government. Therefore, this Court finds that there is no necessity for an evidentiary hearing since the matter will be resolved on the facts from the transcript and as it occurred at the time of the hearing, and not someone's later recollection which may conflict with the transcript. Further, this Court accepts the facts set forth in the motion as submitted by the Defendant insofar as they are supported by the official transcript that the Defendant attaches to the motion.

14. The Defendant argues solely that the Immigration Judge "impinged" the Defendant's due process rights by failing to apprise the Defendant that he was eligible for voluntary departure in lieu of deportation. Further, the Defendant argues that the Immigration Judge failed to advise the Defendant of his right to appeal the Removal Order and instead asked if it was correct that the Defendant was accepting the Court's decision and waiving appeal.

15. The Defendant also cites to the applicable statute which governs these matters, Title 8, United States Code, Section 1326(d). That statute provides as follows:

> An alien may collaterally attack an outstanding deportation order if it is established that -
>
> > (1) the alien has exhausted his administrative remedies to seek relief against the order;
> >
> > (2) the deportation proceeding deprived the alien of the opportunity for judicial review; and
> >
> > (3) the entry of the order was fundamentally unfair.

5

The Defendant argues that his administrative remedies were exhausted when the Immigration Judge obtained the Defendant's waiver of appeal at the conclusion of the March 23, 2007 removal hearing.

## ANALYSIS

16. This Court disagrees with the Defendant's interpretation of the record. At all times during the removal proceedings as is memorialized in the written transcripts the Defendant provides as well as the audio of the transcripts provided by the government, it is clear the Immigration Judge was attempting to give the Defendant every opportunity to not only contact his privately retained attorney to see if that attorney would be representing him, but to continue the matter to allow the Defendant to do so. The Defendant acknowledged that he wanted to go back to Mexico. It was explained at several different points during that removal hearing that the Defendant had the right to challenge the government's deportation request. The Defendant was advised that he would have the right to have his private attorney there, challenge documents and witnesses presented by the government, and to present his own witnesses and documents in support of his position. The Defendant acknowledged that he had no right to be in the United States and that he had illegally entered the United States. The Defendant now attempts to collaterally attack this Order saying that he should have been given the right and opportunity to voluntarily depart the United States as opposed to being removed. This Court is not convinced that is the state of the law.

17. This Court also disagrees with the Defendant's interpretation of exhaustion of his administrative remedies. It is clear that the Defendant wanted to go back to Mexico and even gave the Immigration Judge the name of the city where he lived in Mexico. The Defendant did not avail himself of the opportunity to appeal or otherwise pursue

administrative remedies for a review of the Order of Removal. This is one of the requirements of the statute cited above, Title 8, United States Code, Section 1326(d). As stated in <u>United States v. Rodriguez-Martin</u>, 353 Fed. Appx. 217 (11th Cir. 2009), an alien is not entitled to dismissal of an indictment in a subsequent criminal proceeding claiming that his underlying removal proceedings were defective where the defendant declined to avail himself of the administrative remedies or pursue opportunities for judicial review of that removal as required by statute. See also Judge Zloch's opinion in <u>United States v. Hilton-Thomas</u>, 2009 WL 1286351 (S.D. Fla. 2009). Judge Zloch cited the applicable statute as well and the requirements that the burden of proof is upon the defendant in establishing entitlement to collateral review under Title 8, United States Code, Section 1326(d). Further, Judge Zloch referenced the fact that the defendant in that case failed to establish that the entry of a deportation order was fundamentally unfair. Judge Zloch pointed out that at a minimum, the defendant should demonstrate that the outcome of the deportation proceedings would have been different but for a particular error.

18. This Court finds that the facts in this case also establish that the Deportation Order was not fundamentally unfair as to this Defendant. The Defendant admitted under oath at the Deportation/Removal Hearing that he was illegally in the United States and subject to deportation/removal. Therefore, the outcome of the deportation/removal proceedings would not have been different, but for the alleged error the Defendant argues in his motion. In other words, based upon this Court's review of the transcript of the removal proceedings as submitted by the Defendant, the Defendant would have ultimately been removed regardless.

19. Finally, the Defendant does not present any legal authority to establish that the Immigration Judge was required to advise the Defendant of any right to voluntary

7

departure as opposed to being subject to a deportation/removal proceeding. This is a discretionary matter under the applicable statute and the Defendant has not established any clear error in the deportation/removal proceedings in this regard. See Oguejiofor v. Attorney General of the United States, 277 F.3d 1305 (11th Cir. 2002).

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant's Motion to Collaterally Attack the Underlying Deportation Order and to dismiss the Indictment in this case [D.E. 33] be **DENIED**.

This case is presently set for trial on the District Court's docket of April 18, 2016. In order to give the District Court an opportunity to review any objections which may be filed in respect to this Report and Recommendation, this Court finds that it is necessary to shorten the normal fourteen day time period within which to file objections. Therefore, any objections to be filed by the government or the Defendant in respect to this Report and Recommendation shall be filed **no later than close of business on Friday, April 8, 2016.** Weiss v. Standard Ins. Co., 2009 WL 1833963 (S.D. Fla. 2009). Pursuant to Federal Rules of Criminal Procedure, Rule 59(b)(2), failure to file objections timely waives a party's right to review and bars the parties from attacking on appeal any legal rulings and factual findings contained herein.

**DONE AND SUBMITTED** this _____ day of April, 2016, at Fort Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. Robin L. Rosenberg
AUSA Diana M. Acosta
V. J. Benincasa, Esq.